21-6061, United States v. Williams. Ms. Deskin, please proceed. I know you're ready. May it please the court, my name is Laura Deskin, and I represent the appellant Greg Williams. Could you pull that just a little closer to the microphone? Yes. Thank you. You're welcome. I briefed two issues. We have the drug quantity issue and the ACCA issue. I'd like to first address the drug quantity issue because that's really what is driving Mr. Williams' entire sentence here. And we had, if you'll recall, the PSR alleging three packages delivered to his residence that amounted to nine pounds and attributing relevant conduct in that amount to him. That was objected to. I was going to say that the facts surrounding that, what the district, did the district court, and at the trial level, did, and I believe I recall that there was an objection made to the calculation specifically as to how the district court got to the weight that he did. Isn't that correct? That's correct. Yes. So there were two things happening here. The PSR alleged these nine pounds from the packages to his house, and then that was going to be the issue at sentencing. And the government brought forth further evidence on eight packages delivered to another house where they found the drugs, kind of where everything was tied to, and saying that those amounts, well, you know, they were, if you looked at them, they could have approximated nine pounds. And so what happened in this case is the judge, frankly, I think kind of conflated the two, and he never made specific findings that, as to the amounts that he attributed to drugs to these eight packages. He just said, well, the evidence regarding these eight packages is kind of good enough for me, and so I find that the PSR's attribution of nine pounds to these three other packages satisfies me that the base offense level has been met. But I do not believe that that is enough for, I think it needs to be remanded for him to make more specific findings. We did not have any evidence, as the government concedes, regarding those three packages that were specifically at issue. Counsel, you're not contending, then, that the district court relied, mistakenly relied, on those three in the PSR? Well, it's not, it's not clear. He seems to... But that's not an argument that you made in the district court, right? That that reliance was an error in and of itself. No, I don't think that argument was made. The objection, the attorney below relied on his written objection, which was as to the nine pounds and those specific packages. And so, but then you get to the hearing and all the evidence presented as to these eight others that the PSR writer did not find amounted to relevant conduct. Clearly, the government felt it should, but it never objected to that either. It was, it was kind of like you substituted one for the other at the sentencing hearing, but no specific findings were made regarding those eight packages that regarding, you know, in his briefing, the government, in its briefing, the government talked about specific packaging weights and how much could be attributed to each package. Well, none of that came forward at the sentencing. I thought what the court did was it took the one package that had been intercepted and they calculated weights based on that and then extrapolated to the three others that were sent to Mr. Williams' house. That methodology was how the court ended up with the calculated weights. Perhaps that's what it did. Again, I don't think it was clear, but what all that we know about those three packages is that they were three pounds each. And I'm not, it wasn't, nobody ever presented evidence regarding, well, was that, did the post office have three packages that were three pounds each exactly? What were their packaging weights there? What were the sizes? There's two things going on in my mind. One is the methodology for calculation and whether that was a reasonable approach in the case. And then, you know, secondly, kind of trying to affirm that there's, that the package is likely held, you know, illicit drugs. And that goes to the, you know, the falsified names and the common sending from California, etc. Yes, so the court came up with, okay, here's the scheme and here's my method of trying to figure out drug quantities in a case like this. Is that a reasonable approach or not? Well, that would be a reasonable approach if we were only dealing with these eight packages and those were the ones that we're talking about. But the three packages delivered to a separate address, his home, that he shared with his wife, we don't know anything about those. I'm glad to see somebody else in trouble with it because I finally got to the point of what I thought you were arguing was that these could be reasonable calculations, but the trial court adopted specifically what the PSR said, and it does not total up to the calculations that the court came up with. And that, and I was taking argument that it needed to be remanded, as you've already said, for the court to correct, you know, where did he get, he got the weights, but they were not in the PSR, and that's what he said was absolutely correct. Exactly. Am I? That, you are following me, yes. Okay. That's what I was trying to say. But I thought there was no objection to the reliance on the plea in the PSR. There was. That was the PSR objection. Yes. Yep. So, you know, we, at the end of the day, we learned nothing about those three packages. They were from California. We don't know where. And that's, you know, these eight packages, if the court was relying on him, just like you said, then he needed to make specific findings regarding how, you know, which ones, what, what were the weights that he attributed to it, and instead it was just like, well, these nine pounds over here, that's good enough for me, based on what I heard about these packages. Then, if the calculations that he did are correct, and there's a basis for those calculations, it, can this court make that correction itself, or is it the district court? I mean, the same thing you did, but it's going to arrive at the, where the packages came from. Well, he never engaged in a full analysis onto the eight packages, and what weights he would specifically attribute to those packages, how he would have determined packaging weight versus drug weight. The government has given a scenario that the judge could have relied on, but he didn't say that he did that. It wasn't, it wasn't really the, an issue that was grappled with. The judge said, well, putting aside any packaging weights or anything, I just find that these nine pounds that were found in the PSR are, is correct. So, on this issue, all you're asking us to do is to remand so that the court can do the correct calculations from the right packages. The correct calculations need to be made, and perhaps a hearing on that so that they can delve into that further. Because I think what was, what was going on is, the judge was trying to justify nine pounds from these three packages, instead of just saying, if that's what it wanted to hold, that the correct relevant conduct is attributed, perhaps not from these three packages, but from these eight packages, and here's why, and then, then you have to grapple with, okay, what amounts within those packages? And is that on clear error review? Yes. So, can you walk me through how you satisfy clear error under your view of the facts? Well, I think it's clear error because the judge never made any findings regarding how it came up to the nine pounds attributed, it attributed to the defendant. So the ultimate quantity is clearly erroneous. Exactly. I mean, it's clearly erroneous because we do not have factual support in the record for how he calculated attributing exactly nine pounds to the defendant. You don't see those as separate mistakes, the, sort of, the mechanics of how you do the calculation in the ultimate drug quantity question reviewed under different standards of review? I think that the drug quantity has to be proven by a preponderance, and then it's clear error for the judge. It's a question of, did the district court commit clear error in its finding of the drug quantities? And I think that potentially the government did not prove these nine pounds by a preponderance based on this record, and that the district court committed clear error in finding that it, that attributing nine pounds based on these three packages that we know nothing about. I'd like to go also to the next issue because it's interesting in regards to the application of the ACCA and the distinction between the federal and the state and the applications of that. And I also want to ask both counsel, because I didn't see anywhere, but why wouldn't the rule of lenity also crop up in this case? So walk me through, because I know the Ninth Circuit, I believe, is the case that you're relying on mainly. Is that correct? No, the Ninth Circuit, if you're talking about the Batista case, that's a guidelines case that is just instructive. There was a fourth, I filed a 28-J, that was a, I believe, a Fourth Circuit case that held. But I'm still interested in if the rule of lenity has any application in this case at all. I think that the rule of lenity could apply given all of the arguments that we are consistently making, and not this case, but many other cases regarding the correct application of the ACCA. Where do you make the comparison? Is it as the government is arguing at the time that this state conviction was made? Or there's actually two other ones that it's just entirely unclear. Is it at the time of the commission of the federal offense, or is it at the time of sentencing? Well, it makes sense to me. Let me share it with you, because it's the federal, as I understand the facts, it's the federal that's trying to increase with an ACE, you know, determine an ACC. And the reason being is that originally in the state and the federal crimes, that they were, as to the marijuana and the hemp, that were identical. The feds come along and take hemp out of the statute. Now, that's why I was looking at the Ninth Circuit case, because it would depend on which jurisdiction is trying to, and to me, it made sense as to which jurisdiction was trying to increase their sentence. Yes, and here... And the feds are the ones here. That's correct. But then that's what brought the question of the rule of lenity. Yes, I mean, I think that the rule of lenity does apply, and that in that case, you know, the tie goes to to the defendant here. Because it is unclear. Otherwise, you can look to issues of statutory construction and try to glean that what they meant was the current controlled substance schedules, because those are constantly changing. Could I reserve... That McNeil case suggests that, you know, it's backward-looking. We go, rather than try to figure out all these changes in the law, just go back to what it was at the time the state law conviction was imposed. What... Isn't that a cleaner, simpler approach in these types of... The McNeil approach? Yeah. I think that is... It's just a totally different concept that we're dealing with with McNeil. So McNeil was looking backwards to the state to determine the part of the statute was there a sentence of over 10 years that was at play. And so you look back at that, and you can't look forward or anywhere else besides that point, really, practically speaking. Because state laws changed constantly. They scrapped their entire, you know, drug statutes. Federal law, too. Exactly. But we tied this one to the federal, a changing schedule, or the legislature did. But here, they really had no choice but to look back. Okay, what, you know, what were we talking about here then? Because otherwise, literally, that conviction disappears for ACCA purposes. It doesn't disappear here. It's just a question of, does it work to increase... I mean, does it work to become a legit predicate? Was it a controlled substance offense? That, that... The controlled substance schedules are just constantly changing. And I think that when you're looking at what is... that we want to have the ACCA apply to, are they somebody that we're worried about, that is dangerous, and that's why it's tied to the current controlled substance schedules. Because that's what tells us... At the time they committed the state offense, you know, they knew it was a serious drug offense, right? And... They did then, but... They committed the crime anyway, and this ACCA's aversive of the statute in Part 2. That's correct, but then, since then, we have determined that that is no longer considered a dangerous offense, which is why it would be important as to what does the federal government determine as a serious drug offense now, irrelevant to today's controlled substance offense schedules. What if we went the other way, and you know, they... What was not a serious drug offense at the time of the state offense then, by changes in state and federal law, becomes one. I think that in that case, so if you have a state offense, let's say that, if I'm following you, that was a state controlled substance offense then, but not on the federal drug schedules. And then later, it's added that that should count as an ACCA offense. You have like a bath salt situation, for example, is the one that comes to mind, where it was super dangerous. There was somebody in Florida that bit somebody's face, because they took bath salts. So then, the state of Florida got right on it, added it to their schedules. The federal government didn't, until later. So, in that case, that state conviction, under what I am proposing, should, would count as an ACCA predicate. Because today, we consider that a dangerous act. All right, counsel, appreciate your arguments. Okay, thanks. Mr. Harley for Newman United States. Good morning. May it please the court. I'm Jason Harley from the Western District of Oklahoma U.S. Attorney's Office on behalf of the appellee, the United States of America. Starting with issue one, it's our assertion that the district court did not commit clear error when it determined that the weight and base offense level were supported by the evidence considered at the sentencing hearing. The heart of this issue is whether the court had information bearing a minimum indicia of reliability to rely, to arrive at a reasonable estimation. And that weight attributed to Mr. Williams was supported by the testimony of Investigator Hess at the hearing. Counsel, I thought you said in your brief that record wasn't clear as to exactly which packages the district court included. And so, you're now saying it was only what was at the hearing? That is our assertion, your honor. So, we recognize that the court was not clear specifically as it regards the three packages sent to the house on 19th Street. However, following the testimony regarding the eight packages to the house sent to 39th Street, the court specifically stated, based on the testimony that I've heard today, they found that it was reasonable to infer that those packages were part of the same course of conduct under basically a Caldwell analysis. Wouldn't it have been error for the district court to have relied on the three in the PSR? It would have been error for them to rely on the three in the- And we don't know, right? We do not know. However, as we cited in our brief, when it is not clear what specifically the court relied upon, and this is from the Rolland case, as long as there is enough evidence to satisfy the minimum threshold, in this case there's 30,000 kilograms of converted weight, then it is not clearly erroneous. And that's what we have here. The government concedes that it did not present evidence to, about the three packages to the house sent on, sent to 19th Street. And looking backwards, mea culpa, if you will, the government should have been more clear with the court to firm that up on the record. However, the court had enough evidence in these eight packages to satisfy that base offense level threshold of 30,000. And I think if you look at the overall circumstances giving rise to the packages on 39th Street versus the packages on 19th Street, there was a controlled buy, as testified to by Officer Cox at the house on 39th Street. There were two controlled deliveries, one in May of 2020, where Mr. Williams personally picked up that package. Then in June of 2020, where he was ultimately arrested and the package that was seized with 1,700 grams of methamphetamine was taken. That was also the house where he said everything in there is mine, and whatever you're going to find in there, four or five pounds of dope, and they found an indicia of drug activity, heat sealers, scales. The 39th Street address is the hub of this operation. And the government presented packages, eight of them in total, from January of 2020 to June of 2020, supporting this base offense level of 36 or 30,000 kilograms of converted weight. And as indicated in the record, Investigator Hess also specified that at no time prior to the January 2020 through June 2020 timeframe, were packages sent from California to this address. Now that again, the expert testifying as to those, what was it, seven or eight packages, seven packages, I believe, of which he referred to six, the problem that I'm having is that those six weren't in the PSR, are they? Your Honor, there were eight total packages. Okay, eight. Including the one that was intercepted. And they were referenced in the PSR, and they were talked, and the PSR writer specifically said he did not have enough information to add those to the weight. And as indicated in the record, at the start of the hearing, I said, and you're going to hear evidence about these packages that the PSR writer did not have. Specifically, the PSR writer did not have access to Investigator Hess. But, so you're saying that the PSR, by him saying that the PSR was correct, that that was not error, because even though they weren't included in the calculation. Your Honor, it comes down to whether or not the court was correct in finding that the base offense level giving rise, you know, the weight towards the base offense level of 36 was correct. And I believe that's paragraph 27 of the PSR. Well, what I'm trying to determine is, is there an error on the part of the district court that can be corrected by a remand saying, straighten that mess out. But then, that still leaves the question and the argument about the proper weights to be considered. Is that right? Your Honor, I think you are correct. Arguably, this could be a lot clearer. This could be remanded to the district court to say, we need more specificity. You know, under the Dalton standard, if you found that this was guesswork. But we submit that it's not, because the district court was very careful in asking about things like packaging. And he even called investigator Hess back to the stand so that he was not speculating as to a certain part of the investigation. And so, while the district court could have, like Judge Baldock said, maybe been a little bit clearer and clean it up. We believe that under the Rollins standard from this, and understanding that's an unpublished opinion, there is enough evidence already in this case demonstrated by the record to support a reasonable inference that these were part of the common scheme or plan. And we don't think that an objective observer can make a finding that a mistake has been made. Counsel, can I ask you a question about your concurrent sentence doctrine argument? Yes, Your Honor. You would agree that the district court erred by failing to calculate the statutory sentencing range on count three. Just didn't do that work. And that was error. Your Honor, I believe that the district court found that the ACCA applied. So, I thought that the court didn't address the ACCA objection, didn't calculate, didn't engage with the objection, didn't calculate the statutory sentencing range. Your Honor, I understand what you're asking now. So, you are correct. The court did not say, I specifically find that the ACCA applies. But it was obvious from the conversation back and forth, the court had made that decision. So, I guess I'm just trying to understand how a district court's obligation to calculate the statutory sentencing range fits into sentencing, right? If we have a guidelines case, we know it's procedurally unreasonable not to calculate the guideline range before you begin, even if you're going to toss the guidelines aside, right? Right. So, how does that work in the context of statutory sentencing? Didn't the district court have an obligation to engage with the argument that Mr., that the defendant advanced here? Your Honor, I think the district court cleared it up and they said, what is driving my sentence here is the count, the sentence from count one, which was 284 months, as you know. And the court was very specific. He said, at no time did I ever consider that a sentence of less than 180 months would ever be appropriate. So, I believe that the court has recognized that there is a statutory minimum and that the guidelines, his guidelines were driven by count one, not count three. But that sounds like a harmless error argument. I mean, isn't the concurrent sentence doctrine sort of a species of harmless error that applies to appellate courts? Sure. I would say that the concurrent sentence doctrine almost ignores the error because under the concurrent sentence doctrine, the case law says you can ignore an erroneous sentence as long as there is a valid conviction for which is equal to or longer than the sentence that was imposed for the allegedly erroneous sentence. But that's a directive that applies to the Court of Appeals, but that doesn't apply to the district court. So, the district court can't avoid its obligations of sentencing just because ultimately it might be harmless error. Well, Your Honor, it is correct that the concurrent sentence doctrine is within full discretion of only the appellate review. So, the district court, you agree with me that the district court did have an obligation here to calculate the statutory sentencing range, even if ultimately it reached its conclusion. And I think the court could have been clearer, but I think the court did address it. The court said, I am calculating the 360 to life, which was from count one. So, it calculated a guideline range for count one. And then he specifically addressed Mr. Williams' argument that said, I recognize, because there was a back and forth between defense counsel of the increase from the statutory max now to a statutory minimum, 10 to 15. So, he's addressing how the guidelines would be impacted by finding that the ACC applied. However, he said repeatedly, that is, even if I ruled in your favor, it is not driving my decision here today. I just want to make sure I understand your argument. So, you agree that courts do have obligations to calculate the statutory sentencing range and that that was done here? I think the case law is very clear. Courts are required to calculate appropriate guidelines sentencing ranges. I'm talking about the statutory sentencing range. Yes, Your Honor. And I think the district court here in this case, I mean, maybe he could have been more clear, but at various points, he recognized that there was a statutory minimum here. Could you turn to the argument on the ACCA issue and whether it is backward looking or not? Why isn't Ms. Deskin right that the defendant ought to get kind of the benefit of, you know, more lenient schedules going forward from the state, from the state law conviction? Your Honor, starting first with the briefs, we would say that Batista and Hope are not the cases to apply to this case. Actually, Trawick's is probably more appropriate. What about Cantu? So, Judge Hartz did talk about, in his concurring opinion, about the possibility in the future of applying a scenario like Batista and Hope. That is correct. Cantu was a little bit different because at the time it was a salvia derivative case. At that time, the Oklahoma statute was broader than the federal statute. One very important point that we cannot overlook in this case, at no time in consideration in this case, was Mr. Williams' state statute broader than the federal statute. So, as you know, Batista starts with this 2018 Agricultural Improvement Act and it removes hemp from the definition of marijuana. Oklahoma did that in 2015. So, in 2015, hemp had already been removed from the Oklahoma schedule. Then, in 2018, it was removed from the federal schedule. That was not the case in Arizona, understanding it was a guidelines case and it regarded a six-point enhancement under 2K.2. But that is also the similar case in Hope as well. And so, I think Judge Hartz also touches on some of the concerns that we touch on in our brief, Your Honor. And it is the constitutional norms and the notice. And this approach, I think, if you've kind of touched on the scenario, right, if you have a conviction at the time of the state conviction, it is broader than the statute at the time of the comparative federal thing. Then, you know, we apply the categorical approach and that's easy. But applying this Batista standard could also cut the other way, right? Because, as Your Honor touched on, what happens if at the time of your state conviction, you have a schedule that was not federally included? And jump forward 10 years later, now it is federally included. I can guarantee you that that due process analysis will be then raised by defense counsels to say, well, wait a minute, this is not fair. It goes against constitutional norms. She said no, but she wasn't really committing to that. Right. Because really, if you look at the principles and purpose of the categorical approach, that's one of the designs of the system. I recognize it has its flaws, right? But a defendant at the time that they plead guilty to their state conviction knows what the potential ramifications are if they were to commit future crimes. And I also understand defense's argument about potential collateral consequences. I believe we addressed that in our brief and we would ask the court not to speculate about all the future impacts that this could have because they're endless and they're uncertain. As your Honor has already pointed out, these schedules are constantly changing, whether it's state or whether it's federal. So if we don't address the ACCA argument and we adopt the concurrent sentence doctrine or exercise our discretion to invoke it, the district court didn't engage with it directly. Mr. Williams is never going to have an opportunity to have any court consider that argument. Isn't that right? Even though he made the argument, preserved it, developed it, district court didn't engage with it, you're asking us not to engage with it. That is our first request, that you apply the concurrent sentence doctrine. But I think it's obvious by the questions the court has asked both counsels today that you are considering the second point. But I guess my question is, do you think that Mr. Williams would have an opportunity to address his, have his ACCA argument addressed ever if we don't do it or don't direct the district court to address it in this case? I can't think of a scenario where he would. But again, we would say that his ACCA argument, at least as of the facts of this case are currently, is incorrect. His case is more like Trawick's in that at Trawick's, as your Honor knows, those three prior convictions were held to be serious drug offenses. Mr. Williams' case is no different. At no time, whether it's at the time of his state conviction, may I finish, your Honor? At the time of his state conviction or his federal sentencing was the schedule for Oklahoma ever broader than the federal schedule. I think we understand your argument. Thank you for your appearance this morning. Counselor excused and the case will be submitted.